Argued September 12; affirmed October 3, 1939

## ELMER *v.* OREGON SHORT LINE RAILROAD CO.

(94 P. (2d) 302)

Department 1.

*Maurice D. Sussman*, of Portland (K. C. Tanner, of Portland, on the brief), for appellant.

*W. H. Morrison* and *Donald K. Grant*, both of Portland (Maguire, Shields & Morrison, of Portland, on the brief), for respondent.

KELLY, J.   This action is based upon the provisions of the Federal Employers Liability Act (45 U. S. C. A. section 51, et seq.).   It was instituted by Frances Elmer, as administratrix of the estate of Lyone W.

Elmer, deceased. Plaintiff's decedent met his death on the morning of October 18, 1935. At the time of his death, and for about three weeks prior thereto, said decedent was employed by defendant as a car inspector in the defendant's yards at Glenns Ferry, Idaho.

On the date named, pursuant to his duty as a car inspector, said decedent had been working with Mr. John McGill lead car inspector for defendant. At 2:03 a. m. on the date named Mr. McGill left decedent, after instructing him to complete the air test of an extra train No. 5082, and then return to the depot to inspect the eastbound passenger train No. 14. At that time decedent asked Mr. McGill if train No. 14 was due at 2:30 to which Mr. McGill replied, "No, at 2:27".

Train No. 14 entered the yards in suit at 2:25 a. m. The eastbound trains ran upon the track just south of the track over which the westbound trains were operated, said tracks being most northerly two parallel tracks in the yards. At the place of the accident, there was a series of tracks paralleling each other south of the two just mentioned. The three of these tracks immediately south of the eastbound track being storage tracks and at least two still further south were freight tracks.

At the time of the accident, there were cars spotted on the storage track immediately south of the eastbound track. Immediately after the accident, the decedent's body was found between the eastbound and westbound tracks. He was lying on his left side with his head to the east. When thus discovered, he was dead, apparently killed instantly. The cross-over rail of the track that connected the eastbound and the westbound track was about a foot from his head, and the south rail of the westbound track was about a foot from his head.

The south rail of the westbound track and the north rail of the cross-over track form a V-shape. Mr. Elmer's body was found in this V so formed. He was lying 117 feet from the west edge of the property line of the highway crossing known as Commercial street and 129 feet west of the paved portion of the highway crossing. When picked up, he was lying about six feet north of the north rail of the eastbound track.

There were no eyewitnesses to the tragedy.

Mr. McGill testified that when he left deceased, the work that decedent still had to do, in inspecting train No. 5802, would have required ten or eleven minutes. No one knows what decedent did after he had finished that work, except that by some route he went to the place where me met his death.

Paragraph X of plaintiff's amended complaint sets forth the specifications of defendant's alleged negligence thus:

"That the defendant was careless, reckless and negligent in the following particulars, to-wit:

a. In failing to have the locomotive of the train which struck the said Lyone W. Elmer equipped with a headlight affording sufficient illumination to enable the persons in the cab of such locomotive to see the said Lyone W. Elmer at a distance of at least 800 feet in front of said locomotive, and in failing to keep said headlight in good condition so that the persons in the cab of said engine could see the said Lyone W. Elmer at all distances in front of said engine for at least 800 feet.

b. In operating the engine of train number fourteen through the yards at Glenns Ferry, Idaho, without keeping a lookout for persons and property then and there working and being located in the yards of the defendant company.

c. In failing to observe the rule of the defendant in the operation of said engine, in that the train was not being operated under full control.

d. In operating said engine without sounding a warning of its approach, and in not warning the said Lyone W. Elmer and other employees in said vicinity of the approach of said engine and train.

e. In operating said engine without giving the usual and ordinary warning provided by the rule of the company, and especially in failing to give the succession of sharp whistles as required by the rules of said company.''

The regular crossing signal was given by two long and two short blasts of the steam whistle starting at a point from 400 to 430 feet from the place of the accident. The bell upon the engine was ringing continuously from the time the train left Boise, Idaho, until it stopped at Glenns Ferry. The headlight of the engine was lighted and, as stated, Mr. McGill had told decedent that train No. 14 would arrive at 2:27.

Plaintiff urges that by maintaining a proper lookout defendant's engineer and fireman would have observed decedent in time to have effectively warned decedent of his danger. The only testimony in the record is to the effect that a constant lookout was maintained by the engineer and fireman. It is also contended that instead of the regular crossing whistle, or perhaps in addition thereto, those in charge of defendant's engine should have given a succession of short blasts of the whistle. We are unable to concur in this proposition.

We sympathize with the relatives and friends of decedent in their bereavement, because of his untimely death, and deeply deplore the tragic manner of his passing; but we fail to find anything in the record indi-

cating negligence on the part of the trainmen or of the railroad company.

We have read the authorities cited by plaintiff, but have found none which hold it to be negligence upon the part of the engineer, when his train is approaching a highway crossing, to sound a crossing signal by giving two long and two short blasts of the whistle instead of giving a series of short blasts customarily given when persons or animals are seen upon the track.

Lack of effective warning to plaintiff's decedent of the approach of train No. 14 is the gist of plaintiff's charge of negligence. It is not controverted that he was personally advised of its approach by Mr. McGill. Assuming that the train was approaching at the rate of twenty-five miles per hour, as stated by the engineer, the first long blast of the whistle was given about twenty-two seconds before plaintiff's decedent was struck. Subsequently there were three other blasts of the whistle. Besides that, the headlight was burning and the bell was continuously ringing. We are unable to concur in the suggestion that there was negligence on defendant's part in the manner in which warning was given to decedent of the approach of the train he was intending to inspect.

The only testimony on the subject in the record is to the effect that the headlight of the engine afforded sufficient illumination to enable those in the cab of the engine to see the track ahead for 800 feet.

The testimony discloses that the running board and the boiler of the engine obstructs the view of the engineer and fireman for 75 feet in front of their position in the cab of the engine. This character of engine has been in general use for many years, and there is nothing

in the record upon which to base the charge that its use constitutes negligence.

Manifestly, it would have been possible within the two and a fraction seconds taken by the train in moving the distance of 75 feet for decedent to have jumped out from the shadow of the cars, which were spotted on the adjacent storage track, in an attempt to secure a ride on the pilot of the engine to the station where he was to begin his work of inspection, a distance of 900 or 1000 feet.

No negligence on defendant's part having been shown, no question for the jury was presented.

The judgment of the circuit court is affirmed.

RAND, C. J., and ROSSMAN and BEAN, JJ., concur.